# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
KATRINA R. MCKINNEY          :    Civ. No. 3:14CV01127 (SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN,           :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :    August 24, 2015
                             :
-----------------------------x
```

## RECOMMENDED RULING ON CROSS MOTIONS

Plaintiff Katrina R. McKinney[1] brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §1381 et seq. Plaintiff has moved for judgment on the pleadings to reverse and/or remand the Commissioner's decision. [Doc. #13].

For the reasons set forth below, plaintiff's motion for judgment on the pleadings [**Doc. #13**] is **GRANTED**. Defendant's Motion to Affirm [**Doc. #16**] is **DENIED**. This matter is remanded to the Commissioner for further proceedings in which the ALJ

---

[1] Formerly known as Steven B. Smyers, Jr. [Doc. #13-1, at 1 n.1]. Plaintiff legally changed her name to Katrina R. McKinney on April 23, 2014. (Certified Transcript of the Record, Compiled on September 4, 2014 (hereinafter "Tr.") Tr. 100). Unless directly quoting portions of the record using masculine pronouns, the Court will use feminine pronouns to identify the plaintiff.

1

should reweigh the medical opinions of plaintiff's treating source(s), and reevaluate plaintiff's residual functional capacity and credibility, as further articulated below.

## I.   PROCEDURAL HISTORY

The parties do not dispute this matter's procedural history. Plaintiff filed an application for SSI on December 8, 2011, alleging disability beginning November 5, 2011. (Tr. 85-92).[2] Plaintiff's claim was denied initially and on reconsideration. (Tr. 55-62). On June 5, 2013, plaintiff and her attorney appeared before Administrative Law Judge ("ALJ") Ronald J. Thomas for an administrative hearing. (Tr. 63-84). On July 26, 2013, ALJ Thomas found that plaintiff was not disabled and denied her claim. (Tr. 12-23). Plaintiff sought Appeals Council review. (Tr. 24-25). On June 6, 2014, the Appeals Council denied review of plaintiff's claim, thereby rendering ALJ Thomas's decision the final decision of the Commissioner. (Tr. 5-7). The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision. On appeal, plaintiff asserts the following arguments:

---

[2] The record also reflects that plaintiff unsuccessfully applied for SSI and Title II disability benefits in 2007. (Tr. 30-34, 48-50, 157).

1.  The ALJ erred by failing to afford controlling weight
    to the opinion of treating psychiatrist Dr. Zachmann,
    pursuant to 20 C.F.R. §416.927(c)(2)-(4);

2.  The ALJ failed to develop the record in violation of 20
    C.F.R. §416.912(d) by failing to request an opinion of
    the plaintiff's limitations from treating physician Dr.
    Sheiman;

3.  The ALJ erred pursuant to 20 C.F.R. §416.929(c)(3)(iv)
    by failing to fully evaluate the use of plaintiff's
    prescribed medications and the consistency of
    plaintiff's allegations with objective medical findings;
    and

4. The ALJ's step 5 determination is unsupported by
    substantial evidence due to his failure to consult a
    vocational expert, pursuant to 20 C.F.R. §416.969a(d).

As further articulated below, the Court finds that ALJ
Thomas erred in his application of the treating physician rule
to Dr. Zachmann's medical source statement.

## II.  STANDARD OF REVIEW

The scope of review of a social security disability
determination involves two levels of inquiry.  <u>First</u>, the court
must decide whether the Commissioner applied the correct legal

principles in making the determination.  Second, the court must decide whether the determination is supported by substantial evidence.  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). **The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly.**  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

Where the Court does reach the second step, to find "substantial evidence" the court must find evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998).  "The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact."  Gonzales v. Apfel, 23 F. Supp. 2d 179, 189

(D. Conn. 1998) (citation omitted).  The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted).  The court's responsibility is to ensure that a claim has been fairly evaluated.  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

To enable a reviewing court to decide whether the determination is supported by substantial evidence, the ALJ must set forth the crucial factors in any determination with sufficient specificity.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding."  Johnston v. Colvin, Civil Action No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability and eligible on the basis of income and resources is entitled to supplemental security income. 42 U.S.C. §1381a.

To be considered disabled under the Act and therefore

entitled to benefits, Ms. McKinney must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §1382c(a)(B)(alterations added); see also 20 C.F.R. §416.920(c) (alterations added) (requiring that the impairment "significantly limit [ ]... physical or mental ability to do basic work activities" to be considered "severe").

    There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering

6

> vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who
> is afflicted with a "listed" impairment is unable to
> perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam).  If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual
> functional capacity to perform his past work. Finally,
> if the claimant is unable to perform his past work,
> the Secretary then determines whether there is other
> work which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dept. of Health and Human Serv., 360 F. App'x 240, 243

(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155

(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.

2009) (per curiam)).  "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted).  "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Thomas concluded that plaintiff was not disabled under the Social Security Act. (Tr. 23). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 24, 2011, the application date. (Tr. 17).[3] At step two,

---

[3] The ALJ's decision references plaintiff's application date of October 24, 2011 (Tr. 15), to which the plaintiff's brief also refers. However, the Court's review of the record indicates that plaintiff filed her application for SSI on December 8, 2011,

the ALJ found that plaintiff had severe impairments of bipolar disorder, generalized anxiety disorder and gender identity disorder in adolescents or adults. (Tr. 17).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17-19). The ALJ specifically considered Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). (Tr. 18). The ALJ also conducted a psychiatric review technique and found that plaintiff had mild restrictions in her activities of daily living, moderate difficulties in social functioning and concentration persistence or pace, and no episodes of extended duration decompensation. (Tr. 18). Before moving onto step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing simple, routine, repetitious work. The claimant is limited to only occasional interaction with the public, co-workers and supervisors." (Tr. 19).

_____

alleging an onset date of November 5, 2011. (Tr. 85-92). The record does not indicate why the October 24 date is referenced as the application date, but because this is not pertinent to the Court's discussion and analysis, it need not further address this point.

At step four, the ALJ found plaintiff did not have any past relevant work. (Tr. 22) At step five, considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. (Tr. 22-23).

## V.   DISCUSSION

On appeal, plaintiff asserts four arguments in favor of reversal or remand, the most compelling of which contends that the ALJ erred in failing to afford controlling weight to the opinion of treating psychiatrist Dr. Zachmann. Specifically, plaintiff argues that the ALJ should have afforded controlling weight to this opinion in light of Dr. Zachmann's treating relationship with the plaintiff and the consistency of her opinion with the medical record. [Doc. #13-1, at 10-12]. The Commissioner argues that the ALJ properly evaluated Dr. Zachmann's opinion because her conclusions are not supported by her treatment notes and are contradicted by the opinion of the state reviewing examiner, Dr. Goodman. [Doc. #17, at 4-6]. For the reasons set forth below, the Court finds that the ALJ erred in his application of the treating physician rule to Dr. Zachmann's opinion.

The record contains two May 2012 opinions rendered by Dr.

10

Dorothy Zachmann, M.D., both of which are largely consistent in the limitations ascribed to plaintiff's functional capacity. See Tr. 271-81. The ALJ's decision, however, only referred to the Zachmann opinion included at Exhibit 16F in the record. In that opinion, Dr. Zachmann noted that she had seen plaintiff from October 2011 through the date of the opinion, May 16, 2012. (Tr. 278). She further noted plaintiff's diagnoses of Bipolar I disorder, gender identity disorder, and "GAD[4]/Panic Dis[order]," as well as plaintiff's then medications of Zyprexa[5] and hormones for gender transition. (Tr. 278) (alteration added). Dr. Zachmann recounted plaintiff's eight prior suicide attempts and further noted plaintiff's "recent mania [and] depression," which resulted in plaintiff abandoning psychiatric treatment to meet a man in Indiana, with whom she had become friendly on the internet. (Tr. 278). Although Dr. Zachmann wrote that plaintiff had "OK" cognitive status with respect to concentration, memory and attention, she later opined that plaintiff had a "serious

---

[4] Acronym for generalized anxiety disorder. MediLexicon.com, Generalized Anxiety Disorder (GAD), http://www.medilexicon.com/medicaldictionary.php?s=Generalized+A nxiety+Disorder (last visited June 19, 2015).

[5] "Zyprexa [] is an antipsychotic medication that affects chemicals in the brain. Zyprexa is used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder (manic depression)[.]" Drugs.com, Zyprexa, http://www.drugs.com/zyprexa.html (last visited June 19, 2015).

problem" in her abilities to perform work activity on a
"sustained basis" and at a "reasonable pace[.]" (Tr. 278, 280).
She also opined that plaintiff had an "obvious problem"
"[c]arrying out multi-step instructions" and "[c]hanging from
one simple task to another[,]" and an "obvious" to "serious
problem" "[f]ocusing long enough to finish assigned simple
activities or tasks[.]" (Tr. 280). With respect to plaintiff's
activities of daily living, Dr. Zachmann stated plaintiff had a
"serious problem" "[u]sing good judgment regarding safety and
dangerous circumstances[,]" as well as in her ability to use
"appropriate coping skills to meet ordinary demands of a work
environment[.]" (Tr. 279). She further noted that plaintiff had
an "obvious problem" "[h]andling frustration appropriately[.]"
(Tr. 279). In large part, Dr. Zachmann found plaintiff only had
a "slight problem" with social interactions, but had an "obvious
problem" in her ability to "[g]et[] along with others without
distracting them or exhibiting behavioral extremes[.]" (Tr.
280).[6]

---

[6] Dr. Zachmann also completed a State of Connecticut Department
of Social Services Medical Statement dated May 16, 2012,
included at Exhibit 15F in the record. (Tr. 273-77). In this
statement, Dr. Zachmann identified plaintiff's diagnoses of
Bipolar I disorder, depression, GAD and panic disorder, from
which plaintiff had suffered since age twelve. (Tr. 274). Dr.
Zachmann opined that these conditions prevented plaintiff from
working at that time, but she was unable to determine how long

With respect to Dr. Zachmann's opinion, the ALJ stated that:

> In May 2012, Dorothy Zachmann, M.D., opined that the claimant's recent mania and depression resulted in her leaving treatment and going to Indiana to meet a man whom the claimant had met on the Internet. (Exhibit 16F at 1). On examination, the claimant was anxious, restless and sad but had "okay" attention, memory and concentration. (Exhibit 16F at 1). The claimant [sic] indicated that the claimant would have difficulty using good judgment and appropriate coping skills on [a] daily basis. (Exhibit 16F at 2). The claimant would have moderate problems with social interactions and moderate problems with task performance. (Exhibit 16F at 3). The undersigned gives limited weight to Dr. Zachmann's opinion regarding the claimant's limitations because they are unsupported by the claimant's GAF scores or level of mental health treatment, i.e., group therapy versus individual therapy.

(Tr. 22)(alterations added).

Conversely, the ALJ gave "great weight" to the opinion of the state reviewing non-examiner, Dr. Goodman, Ph.D., that

---

plaintiff would be unable to work. (Tr. 274). She further stated that plaintiff's condition had recently deteriorated in that she had had "more impulsivity [and] mood instability." (Tr. 274). The report did not opine on plaintiff's physical limitations, but provided a mental residual functional capacity assessment. Dr. Zachmann found plaintiff "moderately limited" in her abilities to "[u]nderstand and remember detailed instructions[,]" "[m]aintain attention and concentration for extended periods[,]" and "[s]ustain an ordinary routine without special supervision[.]" (Tr. 276). She found plaintiff "moderately" to "markedly limited" in her ability to "[p]erform activities within a schedule, maintain regular attendance, [and] be punctual within customary tolerances[.]" (Tr. 276). Otherwise, Dr. Zachmann found plaintiff not significantly limited in all other respects, including the abilities to understand, remember and carry out very short simple instructions. (Tr. 276).

13

plaintiff "would not be significantly limited in her ability to perform unskilled work with only occasional interaction with the general public" because "it is consistent with the situational stressors expressed in group therapy, claimant's group therapy and minimal mental health treatment that the claimant has received." (Tr. 22). Dr. Goodman found plaintiff "moderately limited" in her ability to: "carry out detailed instructions[;]" "maintain attention and concentration for extended periods[;]" "complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods[;]" and "interact appropriately with the general public." (Tr. 296-97). Dr. Goodman otherwise found plaintiff "not significantly limited" in all other respects. (Tr. 296-97).

Pursuant to 20 C.F.R. §416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source.  If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] [] record," the opinion is given controlling weight.  20 C.F.R. §416.927(c)(2).  If the opinion,

however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. "Medically acceptable" means that the "clinical and laboratory diagnostic techniques that the medical source uses are in accordance with the medical standards that are generally accepted within the medical community as the appropriate techniques to establish the existence and severity of an impairment." SSR 96-2P, 1996 WL 374188, at *3 (S.S.A. July 2, 1996). Furthermore, "not inconsistent" means that the opinion does not need to be consistent with all other evidence, but rather there must not be "other substantial evidence in the case record that contradicts or conflicts with the opinion." Id. If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307.

As an initial matter, the Court finds that the ALJ erred by relying on plaintiff's GAF scores as indicative of plaintiff's functional capacity in light of her well-documented mental impairments. A similar situation has recently been confronted by a judge of this District:

15

> [T]he ALJ erred in relying on the GAF score as an
> indicative of the severity of plaintiff's mental
> impairment. The GAF score is a scale promulgated by
> the American Psychiatric Association to assist in
> tracking the clinical progress of individuals with
> psychological problems in global terms. A GAF score
> does not have a direct correlation to the severity
> requirements in the SSA's disorders listing. The ALJ
> must consider the entire record before reaching her
> conclusion.

Carton v. Colvin, No. 3:13CV379(CSH), 2014 WL 108597, at *15 (D.

Conn. Jan. 9, 2014)(internal citations, parentheticals,

quotation marks and alterations omitted). Indeed, it appears

that the ALJ largely discounted Dr. Zachmann's opinion based on

plaintiff's GAF score of 60, which was assessed in June 2012,

one month after Dr. Zachmann's opinion. Even if the ALJ's

reliance was not in error,[7] the ALJ failed to note plaintiff's

other GAF scores of record, all of which are indicative of

"[s]ome impairment in reality testing or communication [] OR

major impairment in several areas, such as work or school,

family relations, judgment, thinking or mood (e.g., depressed

man avoids friends, neglects family, and is unable to work[.])."

American Psychiatric Ass'n, Diagnostic and Statistical Manual of

---

[7] The scores on which the ALJ relies are indicative of
"[m]oderate symptoms [] OR moderate difficulty in occupational,
or social functioning (e.g., few friends, conflicts with peers
or co-workers)." American Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders (4th ed. Rev.
2000)(alteration added)(capitalization in original).

16

Mental Disorders (4th ed. Rev. 2000) (alteration added) (capitalization in original).[8] <u>See</u> Tr. 246 (October 31, 2011, treatment note indicating plaintiff's current GAF of 40); Tr. 258 (November 18, 2011, treatment note indicating plaintiff's GAF of 45[9]); Tr. 338 (April 30, 2012, treatment note indicating plaintiff's current GAF of 40, but also noting highest GAF in past year of 75).

The Court further finds that the ALJ mischaracterized the extent of plaintiff's mental health treatment by inferring that because she participated in group therapy, rather than individual therapy, her functional limitations were not as extensive as described by Dr. Zachmann. Although the record reflects plaintiff's participation in group versus individual therapy, it was part of "intensive outpatient" treatment, involving multiple counseling sessions per day. <u>See generally</u> Tr. 248-55, 314-75. In May 2012, plaintiff was admitted to intensive outpatient treatment in light of her history of suicide attempts, to prevent hospitalization, and to meet her need for more frequent and intensive treatment. (Tr. 338); <u>see</u>

_____

[8] This description of symptoms is applicable to GAF scores ranging from 31 to 40.

[9] A score of 45 indicates "[s]erious symptoms [] OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." <u>American Psychiatric Ass'n</u>, <u>supra</u> (alteration added)(capitalization in original).

<u>also</u> Tr. 246 (October 2011 admission to intensive outpatient
program in light of plaintiff's having failed outpatient
treatment, to prevent hospitalization and because plaintiff was
"suicidal"). In May 2012, plaintiff participated in over 35
group therapy sessions. <u>See</u> Tr. 349-76 (daily flow sheets for
plaintiff's May 2012 sessions in the REACH adult intensive
outpatient program). Plaintiff further testified that intensive
outpatient care is "the same treatment they give you in the
hospitals, except it's over a six to eight week period instead
of three days overnight." (Tr. 406). Upon additional examination
by her attorney, plaintiff further explained that the intensive
outpatient program is three days per week from 10:00 A.M. to
1:30 P.M., "[a]nd it's a lot of groups, so it's a group of
people suffering from bipolar and anxiety and major depression
disorders. And the groups are there to teach you how to manage
anxiety and panic disorders." (Tr. 414-15). Plaintiff also
indicated she had returned to this program several times, the
most recent of which was in April 2013. (Tr. 415).

The record, including plaintiff's testimony, does not
support the ALJ's conclusion that plaintiff participated in
minimal mental health treatment. Rather, it appears on the
record before the Court that during the relevant time period,

plaintiff was engaged in intensive therapy, albeit in a group setting. Therefore, the Court finds it was improper for the ALJ to discount Dr. Zachmann's opinion on such a basis. Cf. Wright v. Barnhart, No. 3:05CV1487(SRU)(WIG), 2006 WL 4049579, at *14 (D. Conn. Dec. 14, 2006) ("[T]he ALJ improperly relied on his own lay opinion in concluding that that the lack of individual psychotherapy or psychiatric treatment, as opposed to group therapy, supported his finding that Plaintiff's mental impairment was non-severe").[10]

Moreover, Dr. Zachmann's opinion is consistent with other evidence of record, including treatment notes and the opinion of treating counselor Linda Wolfson, LCSW. For example, treatment notes consistently referenced plaintiff's depression, anxiety, thoughts of hopelessness and worthlessness, panic disorder and

---

[10] Although not raised by plaintiff, the Court further finds that the ALJ failed to provide "good reasons" for discounting Dr. Zachmann's opinion. When considering opinion evidence, the factors an ALJ must consider include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2003) (citation omitted); 20 C.F.R. §416.927(c)(1)-(6). Here, it is not clear from the ALJ's opinion that he considered these factors in weighing Dr. Zachmann's opinion. Because it is not clear that the ALJ considered all of the factors enumerated in the regulations, the ALJ failed to give "good reasons" for according Dr. Zachmann's opinion little weight, and this constitutes an independent reason to remand the case to ensure that all of the enumerated factors were given appropriate consideration.

bipolar diagnosis. See generally Tr. 236-39, 245-46, 250-53, 325-38, 350-58. The record further reflects plaintiff's treatment with a multitude of antipsychotic medications, including Lithium, Abilify, Zyprexa and Seroquel. See, e.g., Tr. 345 (medication changes and additions from April 30, 2012, through January 30, 2013). Treatment notes also reported plaintiff's inability to structure her time (Tr. 243, 335), poor concentration (Tr. 236, 245), indecision, and poor impulse control and judgment (Tr. 245, 337). Further, Dr. Zachmann's contemporaneous treatment note dated May 16, 2012, noted that plaintiff was "not stable" and was experiencing increased anxiety and hypomania. (Tr. 362).

Dr. Zachmann's opinion is also consistent with the reports of plaintiff's counselor, Ms. Wolfson. For example, both sources opined that plaintiff is moderately limited in her ability to carry out detailed instructions (Tr. 268, 276), moderately to markedly limited in her ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 269, 276, 281), and an obvious or moderate problem getting along with others without distracting them or exhibiting behavioral

20

extremes (Tr. 269, 280). These conclusions are further supported by plaintiff's hearing testimony and treatment records as identified above. See also Tr. 404, 406, 419 (plaintiff testified that she has panic attacks four times per day, lasting on average thirty to forty minutes, which prevent her from working); Tr. 410-11 (plaintiff testified that she had a panic attack in the elevator en route to the administrative hearing because she is afraid of closed rooms, which necessitated an escort by a security guard to the hearing room); Tr. 412 (plaintiff's last job at Target ended because: "When I panic, I get talkative, and they said I was being too disruptive. And then I started crying a lot. And I just ended up stop returning to work" (sic)); Tr. 416 (describing her panic attacks as either "getting really talkative and I talk and talk and I won't shut up" or "I sit and cry and breathe heavy and it feels like I'm having a heart attack"); Tr. 418 (testimony that plaintiff has anxiety from getting ready and applying her makeup "[b]ecause if I sweat then I have to reapply it, and if I don't look passable people will talk, and then if they talk I get a panic attack or if they don't talk I get a panic attack"); see also Tr. 328 (May 2012 psychosocial assessment noting history of mania, depression, suicidal thoughts, crying, nightmares and anxiety);

Tr. 250-51 (complaints of feeling "very anxious"); 336 (mental

status examination revealed motor retardation, with a depressed

mood, generalized anxiety and panic attacks); Tr. 338 (noting

Axis IV problems with occupation, economics and social

environment).[11]

---

[11] A Treatment Integrated Summary from May 2, 2012, paints an
illuminating picture of plaintiff's psychiatric history and
then-mental status:

> 27 [year old] transgender F (male to female), self
> referred for treatment of Bipolar Disorder. Patient
> has a history dating back to 14 years old when she
> began to cut and experience suicidal thoughts. Since
> then she has had seven hospitalizations and at least 2
> IOP treatments (REACH), all for depressive symptoms
> with [suicidal ideation]. She denies any substance
> abuse history. There is a family history of mood
> disorder and addiction with both parents; patient was
> born "addicted to cocaine." Patient lives with father
> who is abusive, encouraging the patient to "kill"
> himself frequently. Mother is in Florida with
> [patient's] step-father.
>
> Patient is a junior in college, was in "special
> classes for ADD" as a child. She has had a number of
> jobs in retail, never lasting long and hasn't worked
> in 3 months.
>
> Currently patient is depressed, anxious with panic
> attacks; nightmares, hopeless, helpless, worthless,
> sleep is poor and insight is limited.
>
> Treatment goals: stabilize mood, educate about
> medications, [illegible] and manage mood.

(Tr. 340) (alterations added). Other evidence of record supports
the statement that plaintiff held a number of jobs in retail,
never lasting more than a few months. See Tr. 94-98 (detailed
earnings query); Tr. 103-08 (work history assistant tool query);

To the extent that defendant relies on treatment records reflecting plaintiff's statements that she was "ok," "had no complaints," and was "doing well," to support the ALJ's weighing of Dr. Zachmann's opinion [Doc. #17, at 5], all such treatment records post-date Dr. Zachmann's opinion. Moreover, these scant treatment notes do not constitute substantial evidence in light of the evidence otherwise supporting Dr. Zachmann's opinion, as identified above.

Defendant next argues that because Dr. Zachmann's opinion was contradicted by the opinion of Dr. Goodman, the ALJ correctly declined to afford it controlling weight. The Court disagrees. Although the regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record[,]" Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995)(citation omitted), "[g]enerally, ... more weight [is given] to opinions from ... treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

---

Tr. 335 (noting plaintiff's employment history of eleven years working for retail stores for three months at the most).

individual examinations." 20 C.F.R. §416.927(c)(2) (alterations
added). The treating physician's opinion is assigned greater
weight "because of the continuity of treatment ... provide[d] and
the doctor/patient relationship [the treating source] develops
place[s] [the treating source] in a unique position to make a
complete and accurate diagnosis of his[/her] patient." Mongeur v.
Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (alterations
added)(citations omitted). "This is especially the case with
respect to mental health issues because the inherent subjectivity
of a psychiatric diagnosis requires the physician rendering the
diagnosis to personally observe the claimant." Carton, 2014 WL
108597, at *15 (citing Bethea v. Astrue, 3:10CV744(JCH), 2011 WL
977062, at *11 (D. Conn. Mar. 17, 2011) (internal quotation marks
omitted)). Indeed, for this reason, "[i]n the context of a
psychiatric disability diagnosis, it is improper to rely on the
opinion of a non-treating, non-examining doctor because the
inherent subjectivity of a psychiatric diagnosis requires the
physician rendering the diagnosis to personally observe the
patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524
(W.D.N.Y. 2007); see also Rodriguez v. Astrue, No. 07 Civ. 534
(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009
(holding, in the context of a claimant's application for SSI

24

based on a mental disability, that the findings of the non-examining physician "should have been discounted or addressed with some skepticism because they were largely inconsistent with the examining physician's findings and did not account for the subjective nature of the patient's disease." (citation and internal quotation marks omitted)).

Here, defendant fails to point to any evidence of record that supports Dr. Goodman's opinion. Indeed, the opinion evidence from plaintiff's treating sources largely contradicts Dr. Goodman's opinion. Compare Tr. 296 (Dr. Goodman's opinion that plaintiff is not significantly limited in her ability to understand and remember detailed instructions) with Tr. 276, 281 (Dr. Zachmann's opinion that plaintiff is moderately limited in this ability) and Tr. 268 (Ms. Wolfson's opinion that plaintiff is moderately limited in this ability); compare Tr. 296 (Dr. Goodman's opinion that plaintiff is not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances) with Tr. 276, 280 (Dr. Zachmann's opinion that plaintiff is moderately to markedly/seriously limited in this ability) and Tr. 268 (Ms. Wolfson's opinion that plaintiff is markedly limited in this ability); see also Tr. 236, 245, 337 (treatment notes

indicating poor concentration, easy distraction and fair to poor impulse control); Tr. 243, 335 (treatment notes reflecting plaintiff's inability to structure her time).  Other evidence of record, as further detailed above, also fails to support Dr. Goodman's opinion. Therefore, because "[i]n the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient[,]" Velazquez, 518 F. Supp. 2d at 524 (alteration added), the Court finds the ALJ erred in relying on Dr. Goodman's opinion over that of Dr. Zachmann's. See also id. ("[A] psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record." (citing Westphal v. Eastman Kodak Co., No. 05CV6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006))).

Accordingly, for the reasons stated, the Court finds that the ALJ erred in his application of the treating physician rule to Dr. Zachmann's opinion. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling.

On remand the Commissioner will address the other claims of error not discussed herein. Additionally, to the extent that the ALJ's credibility and RFC determinations relied on evidence on which he placed improper weight, the ALJ should reconsider the weight placed on such evidence on remand.

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ reweigh the medical opinion evidence and reevaluate plaintiff's credibility and RFC.

**VI.   CONCLUSION**

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings [**Doc. #13**] is **GRANTED.**   Defendant's Motion to Affirm [**Doc. #16**] is **DENIED.**

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order.**   See Fed. R. Civ. P. 72(b)(2). **Failure to object within fourteen (14) days may preclude appellate review.**   See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566,

569 (2d Cir. 1995).

The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Recommended Ruling in this case, and then to the District Judge who issued the Ruling that remanded the case.

SO ORDERED at New Haven, Connecticut, this 24th day of August 2015.

                                    /s/
                         _____
                         HON. SARAH A. L. MERRIAM
                         UNITED STATES MAGISTRATE JUDGE